LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| JESSICA CHOQUE, JASSEL ANTONIO ROMERO PEREZ, LUIS MIGUEL CRUZ MEDINA, MIGUEL ANGEL LEMA, ROSA CANDO, ABINADI CARRETERO, BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY and JOSE MANUEL RAMIREZ, o*n behalf of themselves*, *FLSA Collective Plaintiffs and the Class* | Case No.: **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiff, | |
| v. | |
| 367 BAKE CORP., 64 BAKE CORP., 126 BAKE CORP., 128 BAKE CORP., 307 BAKE CORP., 958 BAKE CORP., 2062 BAKE CORP., and KAMAL KHADR, | |
| Defendants. | |

---

Plaintiffs, JESSICA CHOQUE, JASSEL ANTONIO ROMERO PEREZ, LUIS MIGUEL

CRUZ MEDINA, MIGUEL ANGEL LEMA, ROSA CANDO, ABINADI CARRETERO,

BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY

and JOSE MANUEL RAMIREZ, ("Plaintiffs"), on behalf of themselves and others similarly

situated, by and through his undersigned attorneys, hereby files this Class and Collective Action

Complaint against 367 BAKE CORP., 64 BAKE CORP., 126 BAKE CORP., 128 BAKE CORP.,

307 BAKE CORP., 958 BAKE CORP., 2062 BAKE CORP., (the "Corporate Defendants") and

KAMAL KHADR (the "Individual Defendant," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.     Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages due to fixed salary, (3) unpaid overtime, (4) improperly retained gratuities, (5) liquidated damages, and (6) attorneys' fees and costs.

2.     Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages due to time-shaving, (2) unpaid wages due to invalid tip credit, (3) unpaid overtime (4) unpaid wages due to fixed salary, (4) unpaid spread of hours premium, (5) improperly retained gratuities, (6)  statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.     Plaintiff JESSICA CHOQUE, for all relevant time periods, was a resident of Bronx County, New York.

6.     Plaintiff JASSEL ANTONIO ROMERO PEREZ, for all relevant time periods, was a resident of Bronx County, New York.

7.      Plaintiff LUIS MIGUEL CRUZ MEDINA, for all relevant time periods, was a resident of Bronx County, New York.

8.      Plaintiff MIGUEL ANGEL LEMA, for all relevant time periods, was a resident of Bronx County, New York.

9.      Plaintiff ROSA CANDO, for all relevant time periods, was a resident of Queens County, New York.

10.      Plaintiff ABINADI CARRETERO, for all relevant time periods, was a resident of Queens County, New York.

11.      Plaintiff BERNARDO VASQUEZ, for all relevant time periods, was a resident of Bronx County, New York.

12.      Plaintiff JUAN GONZALEZ REYES, for all relevant time periods, was a resident of New York County, New York.

13.      Plaintiff MANUEL GONZALEZ, for all relevant time periods, was a resident of Bronx County, New York.

14.      Plaintiff PEDRO SAY, for all relevant time periods, was a resident of Queens County, New York.

15.      Plaintiff JOSE MANUEL RAMIREZ, for all relevant time periods, was a resident of Bronx County, New York.

16.      Defendants collectively owns and operate a group of stores under the trade names "Tasty Café" and "Gigi Café" at the following locations in New York State:

(a)  64 E. 34th Street, New York, New York 10016 ("64 GIGI CAFÉ") (now closed);

(b)  126 Madison Ave., New York, New York 10016 ("126 Tasty Catering") (now closed);

(c) 128 Madison Ave., New York, New York, 10016 ("128 Tasty Café") (now closed);

(d) 317 7th Ave., New York, New York 10001 ("GIGI Catering");

(e) 367 1st Avenue, New York, New York 10010 ("Tasty Catering")

(f) 958 Third Ave., New York, New York 10022 ("958 GIGI Café");  and

(g) 2062 Broadway, New York, New York 10023 ("2062 GIGI Café') (now closed) (collectively, the "Stores").

17.    At all times relevant herein, Defendant 64 BAKE CORP d/b/a GIGI CAFÉ, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 64 E. 34th Street, New York, New York 10016.

18.    At all times relevant herein, Defendant, 126 BAKE CORP d/b/a TASTY CATERING, was a domestic business corporation organized under the laws of New York, with a principal place of business located at 126 Madison Ave., New York, New York 10016 and an address for service of process at 71 Stephen Mark Lane, New Hyde Park, New York, 11040.

19.    At all times relevant herein, Defendant, 128 BAKE CORP d/b/a TASTY CAFÉ & GIGI CAFÉ, was a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 128 Madison Avenue, New York, New York 10016.

20.    At all times relevant herein, Defendant, 307 BAKE CORP d/b/a GIGI CATERING, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 307 7th Ave., New York, New York 10001.

21.     At all times relevant herein, Defendant, 367 BAKE CORP d/b/a TASTY CATERING, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 367 1st Avenue, New York, New York 10010.

22.     At all times relevant herein, Defendant, 958 BAKE CORP d/b/a GIGI CAFÉ, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 958 Third Ave., New York, New York 10022.

23.     At all times relevant herein, Defendant, 2062 BAKE CORP d/b/a GIGI CAFÉ, is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 2062 Broadway, New York, New York 10023.

24.     Individual Defendant  KAMAL KHADIR is an owner and principal of each of the Corporate Defendants. KAMAL KHADIR exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Individual Defendant frequently visits each of the Restaurants. KAMAL KHADIR exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to KAMAL KHADIR directly regarding any of the terms of their employment, and KAMAL KHADIR would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

25.    At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

26.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, dishwashers, cooks, food preparers, hosts, bartenders, and barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

28.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their (i) proper wages due to time shaving, (ii) proper wages due to fixed salary, (iii) unpaid overtime premiums, and (iv) improperly retained gratuities. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

29.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30.     Plaintiffs brings claims for relief as a collective action pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees  (including but not limited to servers, bussers, runners, dishwashers, cooks, food preparers, hosts, bartenders, and barbacks) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("Class" or "Class Members").

31.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ are members of both the Class and the Tipped Subclass.

33.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each

member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to pay wages due to time-shaving, (ii) failing to pay proper overtime premiums, (iii) failing to pay proper wages due to fixed salary, (iv) failing to pay spread of hours premium, (v) failing to provide wage statements per requirements of the New York Labor Law, and (vi) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34.    With regard to Plaintiffs MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ, and the Tipped Subclass, Defendants failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the New York Labor Law. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (iv) failed to accurately keep track of daily tips earned and maintain records thereof and (v) improperly retained Plaintiffs gratuities.

35.    Defendants' company-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class member. Plaintiffs and Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

36.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

37.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      (a) Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

      (b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

      (c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

      (d) Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

      (e) Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

      (f) Whether Defendants paid Plaintiffs and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours;

(g) Whether Defendants properly provided notice to Plaintiffs and the Tipped Subclass that Defendants were taking a tip credit;

(h) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

(i) Whether Defendants required Plaintiffs and the Tipped Subclass members to engage in non-tipped duties exceeding 20% of each workweek;

(j) Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

(k) Whether Defendants provided proper wage statements informing (i) Plaintiffs and the Tipped Subclass of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law; and

(l) Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law.

## **STATEMENT OF FACTS**

40. Plaintiff JESSICA CHOQUE

(a) In or around April 2014, Plaintiff JESSICA CHOQUE was hired by Defendants to work as a cashier at Defendants' GIGI CAFE, located at 64 East 34th Street, New York, NY 10017. Plaintiff took maternity leave from March 2016 to June 2016. In or around October 2016, Plaintiff was transferred to Defendants GIGI CAFÉ at 2062 Broadway, New York, New York 10023. In or around June 2017, Plaintiff's employment was terminated.

(b) From the start of her employment until October 2016, Plaintiff JESSICA CHOQUE was scheduled to work six (6) days per week, from 3:00 p.m. to 10:00 p.m. for approximately forty-two (42) hours per week. Starting in October 2016 to the end of her employment, Plaintiff was scheduled to work six (6) days per week, from 6:30 a.m. to 2:00 p.m., for approximately forty-five (45) hours per week.

(c) From the start of her employment, Plaintiff was paid at a rate of $9.00 per hour. Starting in October 2016, Plaintiff was paid at a rate of $10.00 per hour.

(d) From the start of her employment to October 2016, plaintiff was paid by check. Starting October 2016 to the end of her employment, Plaintiff was paid in cash.

(e) Throughout her employment, Plaintiff was not paid all of her proper overtime when working over forty (40) hours per week. Plaintiff was missing approximately two (2) overtime hours per week. When Plaintiff complained to her managers, they would ignore her complaint and claim that the machine malfunctioned.

(f) Throughout her employment Plaintiff was required to come in one (1) hour before her shift to clean and perform prep work, and was required to stay one (1) hour past her shift without being compensated for that extra time.

(a) Defendants automatically deducted a thirty (30) minute meal break from Plaintiff each workday, even though Plaintiff was never provided time to take her meal break. As a result, Plaintiff suffered from approximately three (3) hours of time-shaving per week.

41. Plaintiff JASSEL ANTONIO ROMERO PEREZ

    (a) Plaintiff JASSEL was employed as a grillman from April 2014 to December 20, 2018, at various stores owned by Defendants, including 64 E. 34th Street, New York, New York 10016, 317 7th Ave., New York, New York 10001, 367 1st Avenue, New York, New York 10010 and 2062 Broadway, New York, New York 10023.

    (b) From the start of his employment, Plaintiff JASSEL was paid $11.00 dollars per hour. For the last year of his employment Plaintiff was paid $15.00 dollars per hour.

    (c) Throughout his employment, Plaintiff JASSEL worked five (5) days per week, from 8:00 a.m. to 3:00 p.m., for approximately thirty-five (35) hours per week. Plaintiff would occasionally be required to stay later and work more if needed.

    (d) Throughout his employment, Plaintiff JASSEL suffered from Defendants policy of deducting thirty (30) minutes per workday for a meal break but did not provide Plaintiff the time or opportunity to take the meal break uninterrupted.

    (e) Plaintiff JASSEL was occasionally required to work shifts of ten (10) or more hours. When he did, Plaintiff did not receive his proper spread of hours premiums.

42. Plaintiff LUIS MIGUEL CRUZ MEDINA

    (a) Starting in June 2016, Plaintiff LUIS was hired as a delivery person for Defendants TASTY CATERING located at 367 1st Avenue, New York, NY 10010. In or around June 2016, Plaintiff LUIS was transferred to Defendants

GIGI CAFÉ located at 317 7ᵗʰ Ave., New York, New York 10001, where Plaintiff worked as a food preparer. Plaintiff's employment was terminated in March 2020.

(b) From the start of his employment, Plaintiff LUIS was scheduled to work six (6) days per week, from 5:00 a.m. to 3:00 p.m. Monday to Friday, and Saturdays from 5:00 a.m. to 5:00 p.m., for approximately sixty-two (62) hours per week. Starting in June 2016, Plaintiff worked six days per week, from 5:00 a.m. to 2:30 p.m. five days per week, and from 6:00 a.m. to 1:00 p.m. on Sundays, for a total of approximately fifty-four and a half (54.5) hours per week.

(c) From the start of his employment until June 2016, Plaintiff LUIS was paid in cash at a fixed salary rate of $330 per week. There was never any agreement that the fixed salary was intended to cover any overtime hours.

(d) Starting in June 2016, Plaintiff LUIS was paid $10.00 dollars per hour, by check. Starting January 2017, Plaintiff was paid $11.00 dollars per hour. Starting in January 2018, Plaintiff was paid $13.00 dollars per hour. Starting in January 2019, Plaintiff was paid $15.00 dollars per hour.

(e) Starting in June 2016 through the end of his employment, Plaintiff LUIS was not paid for all of his overtime hours worked. Plaintiff was missing approximately two (2) overtime hours per week.

(f) Throughout his employment, Plaintiff LUIS had thirty (30) minutes automatically deducted for a meal break. However, Plaintiff was never provided an opportunity to take the meal break uninterrupted. As a result, Plaintiff suffered from approximately three (3) hours of time-shaving per week.

(g) Prior to June 2016, when Plaintiff LUIS worked shifts of ten (10) hours or more, Plaintiff would not receive any spread of hours compensation.

43. Plaintiff MIGUEL ANGEL LEMA

(a) Starting in July 2013, Plaintiff MIGUEL was hired as a cook for Defendants at GIGI CATERING located at 317 7th Ave., New York, New York 10001. Plaintiff's employment was terminated in December 2018.

(b) Plaintiff MIGUEL was scheduled to work six (6) days per week, from 6:00 a.m. to 3:00 p.m. for approximately fifty-four (54) hours per week. Starting in June 2017, Plaintiff was scheduled to work five (5) days per week, from 6:00 a.m. to 3:00 p.m. for approximately forty-five (45) hours per week.

(c) From the start of his employment, Plaintiff MIGUEL was paid at a fixed salary rate of $850 per week in cash. There was never any agreement that this fixed salary would cover his overtime hours.

(d) Starting in June 2017, Plaintiff MIGUEL was paid at a fixed salary rate of $670 per week in cash. Again, there was never any agreement that this fixed salary would cover his overtime hours.

(e) Throughout his employment, approximately twice per week, Plaintiff MIGUEL was required to stay back for two (2) hours to clean and organize his work area before being allowed to leave, for approximately four (4) hours of unpaid work per week.

44. Plaintiff ROSA CANDO

(a) Starting in April 2013, Plaintiff ROSA was hired to work in the catering department of Defendants GIGI CATERING at 317 7th Ave., New York, New

York 10001. Plaintiff was required to answer the phone and take catering orders, and help package the catering orders. Plaintiff quit in June 2019.

(b) From the start of her employment until January 2019, Plaintiff ROSA worked from 5:00 a.m. to 5:00 p.m., Mondays to Saturdays, for approximately seventy-two (72) hours per week. Starting in January 2019 to June 2019, Plaintiff worked Mondays to Saturdays, from 5:00 a.m. to 3:00 p.m., for approximately sixty (60) hours per week. From June 2019 to the end of her employment, Plaintiff worked Mondays to Saturdays from 9:00 a.m. to 5:00 p.m. for approximately forty-eight (48) hours per week.

(c) From the start of her employment until January 2015, Plaintiff ROSA was paid ten ($10) dollars per hour. From January 2015 to January 2016, Plaintiff was paid twelve ($12) dollars per hour. Starting in January 2016 to January 2019, Plaintiff was paid thirteen ($13) dollars per hour. From January 2019 to the end of her employment, Plaintiff was paid fifteen ($15) dollars per hour.

(d) Throughout her employment, Plaintiff ROSA was paid her first forty (40) hours per week by check. Any overtime hours over forty (40) would be paid at a straight time rate in cash.

(e) Throughout her employment, Defendants automatically deducted thirty (30) minute per workday for a meal break, however, Plaintiff ROSA was never provided the time or opportunity to take the break. As a result, Plaintiff suffered from approximately three (3) hours of time-shaving per week.

(f) Throughout Plaintiff ROSA's employment, each week Defendants would manually adjust and round down Plaintiff's hours by approximately three (3) to four (4) hours.

(g) Throughout her employment, whenever Plaintiff ROSA worked shifts of over ten (10) hours per workday, Plaintiff never received her spread of hours compensation.

45. Plaintiff ABINADI CARRETERO

(a) Plaintiff ABINADI was hired in March 2016 as a dishwasher for Defendants GIGI CAFÉ located at 958 Third Ave., New York, New York 10022. In or around September 2017, Plaintiff was transferred to the TASTY CATERING located at 367 1st Avenue, New York, New York 10010. Plaintiff's employment was terminated in or around January 8, 2019.

(b) From the start of his employment, Plaintiff ABINADI worked six days per week, 5:00 a.m. to 2:00 p.m. five days per week, and one day from 5:00 a.m. to 5:00 p.m. for approximately fifty-seven (57) hours per week. Starting in January 2017, Plaintiff worked six days per week, five days from 5:00 a.m. to 1:00 p.m. and one day from 5:00 a.m. to 12:00 p.m., for approximately forty-seven (47) hours per week. Starting in September 2017, to  the end of his employment, Plaintiff work  five days per week, from 5:00 a.m. to 3:00 p.m. for approximately fifty (50) hours per week.

(c) From the start of his employment, Plaintiff ABINADI was paid nine ($9) dollars per hour. Starting in January 2017, Plaintiff was paid eleven ($11) dollars per hour. Starting in January 2018, Plaintiff was paid thirteen ($13) dollars per hour.

(d) From the start of his employment until July 2017, Plaintiff was paid in cash. Starting from July 2017, Plaintiff was paid by check.

(e) Throughout Plaintiff ABINADI's employment, Defendants automatically deducted thirty (30) minute per workday for a meal break, however, Plaintiff ABINADI was never provided the time or opportunity to take the break. As a result, Plaintiff suffered from approximately three (3) hours of time-shaving per week.

(f) Throughout Plaintiff ABINADI's employment, Defendants would manually adjust and round down Plaintiff's hours by approximately three (3) to four (4) hours each week.

(g) Throughout his employment, when Plaintiff worked over ten (10) hours per workday, he was not compensated his spread of hours premium.

(h) Approximately three to four times per week, Defendants required Plaintiff to make deliveries, and kept 50% of all the tips earned.

46. Plaintiff BERNARDO VASQUEZ

(a) Plaintiff BERNARDO was hired in November 2015 as a delivery person for Defendants GIGI CAFÉ located at 958 Third Ave., New York, New York 10022. In or around February 2016, Plaintiff was transferred to the TASTY CATERING located at 367 1 st Avenue, New York, New York 10010. Plaintiff's employment was terminated in or around October 23, 2018.

(b) Throughout his employment, Plaintiff BERNARDO worked five (5) days per week, from 5:00 a.m. to 2:00 p.m. for approximately forty-five (45) hours per week.

(c) From the start of his employment, Plaintiff BERNARDO was paid at a rate of nine ($9) dollars per hour. Starting in August 2017, Plaintiff was paid at a rate of eleven ($11) dollars per hour. Starting in January 2018, Plaintiff was paid at a rate of thirteen ($13) dollars per hour.

(d) Starting in February 2017, Defendants started adjusting and reducing the hours worked by employees. Plaintiff BERNARDO suffered from Defendants reducing his hours by approximately five (5) hours per week.

(e) Throughout his employment, Defendants automatically deducted thirty (30) minutes each workday for a meal break. However, Plaintiff BERNARDO never received the opportunity or time to take his meal break.

47. Plaintiff JUAN GONZALEZ REYES

(a) In January 2003, Plaintiff JUAN was hired as delivery person for Defendants GIGI CAFÉ at 64 E. 34th Street, New York, New York 10016. When that location closed in November 2017, Plaintiff was transferred to Defendants' TASTY CATERING located at 367 1st Avenue New York, New York 10010. Plaintiff's employment was terminated in April 2018.

(b) Throughout his employment, Plaintiff worked Mondays to Fridays, from 5:00 a.m. to 3:00 p.m. for approximately fifty (50) hours per week.

(c) From the start of his employment, Plaintiff was paid at a rate of nine ($9) dollars per hour. Starting in January 2017, Plaintiff was paid at a rate of thirteen ($13) dollars per hour.

(d) Throughout his employment, Defendants automatically deducted thirty (30) minutes each workday for a meal break. However, Plaintiff JUAN never

received the opportunity or time to take his meal break. As a result, Plaintiff

suffered approximately two and a half (2.5) hours of time-shaving per week.

(e) Throughout his employment, approximately twice per week, Plaintiff was

required to clock out and work for two (2) to three (3) hours making deliveries,

off the clock. As a result, Plaintiff suffered from approximately four (4) to six

(6) hours of unpaid, off the clock work.

(f) Throughout his employment, Plaintiff JUAN was not paid for all of his

overtime hours worked. Plaintiff was missing approximately two (2) overtime

hours per week.

(g) Throughout his employment, when Plaintiff was required to make deliveries,

Defendants would retain 50% of all tips earned.

(h) Throughout his employment, when working shifts of ten (10) hours or more,

Plaintiff would not receive his spread of hours compensation.

48. Plaintiff MANUEL GONZALEZ

(a) In September 2010, Plaintiff was hired as a delivery person for Defendants

GIGI CAFÉ located at 64 E. 34th Street, New York, New York 10016. In

December 2015, Plaintiff was transferred to Defendants TASTY CATERING

located at 367 1st Avenue New York, New York 10010. Plaintiff's employment

was terminated on January 24, 2018.

(b) From the start of his employment, Plaintiff worked six (6) days per week, from

11:00 a.m. to 5:00 p.m., for approximately thirty six (36) hours per week

Starting in January 2011, Plaintiff worked six (6) days per week, from 6:00 a.m.

to 3:00 p.m., for approximately fifty-four (54) hours per week. Starting in

December 2015 to the end of his employment, Plaintiff worked five (5) days per week, from 5:00 a.m. to 2:00 p.m. for approximately forty-five (45) hours per week.

(c) From the start of his employment, Plaintiff MANUEL was paid at a rate of five and a half ($5.50) dollars per hour Starting in December 2015, Plaintiff was paid at a rate of nine ($9) dollars per hour. Starting in August 2017, Plaintiff was paid at a rate of eleven ($11) dollars per hour.

(d) Starting in February 2017, Defendants started adjusting and reducing the hours worked by Plaintiff. Plaintiff suffered from Defendants reducing his hours by approximately five (5) hours per week.

(e) Throughout his employment, Defendants automatically deducted thirty (30) minutes each workday for a meal break. However, Plaintiff never received the opportunity or time to take his meal break.

(f) Throughout his employment, Defendants retained 50% of all tips earned by Plaintiff through deliveries.

49. Plaintiff PEDRO SAY

(a) In or around December 2011, Plaintiff PEDRO was hired by Defendants as a delivery person for Defendants TASTY CAFÉ located at 126 Madison Ave., New York, New York 10016. Starting in March 2016, Plaintiff was transferred to Defendants TASTY CATERING located at 367 1st Avenue New York, New York 10010.

(b) From the start of his employment, plaintiff worked five (5) days per week, from 6:00 a.m. to 4:00 p.m. for approximately fifty (50) hours per week. Starting in

June 2014, Plaintiff worked six (6) days per week, Mondays to Fridays from 6:00 a.m. to 4:00 p.m. and Saturdays from 5:00 a.m. to 5:00 p.m., for approximately sixty-two (62) hours per week. Starting in March 2016, Plaintiff worked five (5) days per week, from 6:00 a.m. to 4:00 p.m. for approximately fifty (50) hours per week.

(c) From the start of Plaintiff's employment, he was paid in cash, at a fixed salary rate of $250 per week. Starting in 2015, Plaintiff was paid at a fixed salary rate of $420 per week. For these periods, there was never any agreement that the payment would cover Plaintiff's overtime hours.

(d) Starting March 2016, Plaintiff was paid by check, at a rate of nine ($9) dollars per hour. Starting in June 2017, Plaintiff was paid at a rate of eleven ($11) dollars per hour.

(e) Starting in 2017, Defendants started manually adjusting Plaintiff's hours. As a result of Defendants adjustments, Plaintiff was time-shaved approximately six (6) hours per week.

50. Plaintiff JOSE MANUEL RAMIREZ

(a) In or around September 2015, Plaintiff JOSE was hired by Defendants as a delivery person at the "GIGI'S CAFÉ" located at 64 E. 34th Street, New York, New York 10016. In or around March 2016, Plaintiff JOSE was transferred and worked as a counter-person at Defendants "TASTY'S CAFE" located at 367 1st Avenue, New York, New York 10010. Plaintiff's employment was terminated in or around January 2018.

(b) From the start of Plaintiff JOSE's employment until in or around March 2016, Plaintiff worked six (6) days a week, from 5:00 a.m. to 3:00 p.m. for approximately sixty (60) hours per week.

(c) From the start of Plaintiff's employment, Plaintiff was paid at a rate of nine ($9) dollars per hour. Starting in January 2017, Plaintiff was paid at a rate of nine dollars and fifty cents ($9.50) per hour.

(d) Throughout his employment, Defendants automatically deducted a thirty (30) minute meal break each workday, however Plaintiff was never provided the time or opportunity to take his meal break. As a result, Plaintiff suffered from approximately three (3) hours of time-shaving due to Defendants policy.

(e) Throughout his employment Plaintiff was required to make deliveries after he clocked out of his scheduled shift. Approximately, two times per week, Plaintiff would clock out after his scheduled shift ended, but was still required to complete deliveries. This was approximately one and a half (1.5) hours of off the clock work per incident. As a result, Plaintiff was required to spend approximately three (3) hours per week on off the clock work.

(f) Throughout his employment, Plaintiff would be compensated for his first forty (40) hours by check, and then the remaining overtime hours he worked would be compensated at a straight time basis in cash.

(g) Throughout his employment, Plaintiff worked days of over ten (10) hours, but was never properly compensated with his spread of hours premium.

51. Throughout their employment, Plaintiffs suffered from Defendants policy of time-shaving and off the clock work.

52.    Throughout their employment, Plaintiffs BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ were tipped employees.

53.    Plaintiffs, MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respects to Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the NYLL because Defendants (i) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the NYLL, (ii) failed to accurately track daily tips earned or maintain records thereof, (iii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, (iv) failed to provide a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL, and (v) improperly retained gratuities.

54.    Plaintiffs BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, sweeping, mopping and cleaning the restaurant, preparing sandwiches and salads and general food preparation, and washing dishes. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for <u>all</u> hours worked by tipped employees

55.    Plaintiffs BERNARDO VASQUEZ, JUAN GONZALEZ REYES, MANUEL GONZALEZ, PEDRO SAY, and JOSE MANUEL RAMIREZ and the Tipped Subclass suffered

from Defendants' improper tip retention. Defendants would retain 50% of all tips earned by Plaintiffs.

56.     Plaintiffs and Class members regularly worked days that exceed ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiffs and Class members the spread of hours premium for workdays that exceeded ten hours in length.

57.     Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

58.     Plaintiffs and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants are required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiffs and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiffs and Class members.

59.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, to Plaintiffs and the Tipped Subclass members as Defendants were not entitled to claim any tip credits under the FLSA or NYLL.

60.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked.

61.     Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and Class members, in violation of the NYLL.

62.     Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under the New York Labor Law.

63.     Defendants knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiffs and Class members at the beginning of employment and annually thereafter, in violation of the NYLL.

64.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

### STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

65.     Plaintiffs reallege and reaver Paragraphs 1 through 64 of this Class and Collective Action Complaint as if fully set forth herein.

66.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

67.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

68.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00.

69.    At all relevant times, the Defendants engaged in a policy and practice of refusing to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours that they worked each week due to a policy of time-shaving.

70.    Plaintiffs are in possession of certain records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

71.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

72.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

73.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to time-shaving, and an equal amount as liquidated damages.

74.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR</u>

75.    Plaintiffs reallege and reaver Paragraphs 1 through 74 of this Class and Collective Action Complaint as if fully set forth herein.

76.     At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

77.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them the proper wages for all of their hours worked due to Defendants' policy of time shaving.

78.     Defendants willfully violated Plaintiffs' and the Tipped Subclass members' rights by failing to pay them minimum wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

79.     Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

80.     Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

81.     Defendants failed to provide proper wage statements with correct payment as required by New York Lab. Law § 195(3).

82.     Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid wages due time shaving, unpaid wages due to invalid tip credit, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

   a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid compensation due under the FLSA and NYLL due to Defendants' policy of time-shaving;

d.  An award of unpaid compensation due under the FLSA and NYLL due to Defendants' invalid tip credit;

e.  And award of unpaid spread of hours premium due under the NYLL;

f.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, pursuant to 29 U.S.C. § 216;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, and compensation for all hours of work, pursuant to the New York Labor Law;

i.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

k.  Designation of this action as a class action pursuant to F.R.C.P. 23;

l.  Designation of Plaintiffs as Representatives of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: October 6, 2020

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs and the Class*

By: */s/ C.K. Lee*_____
    C.K. Lee, Esq.